WALGREEN TEXAS COMPANY v. W. G. SHIVERS ET UX.

No. 7670. Decided July 23, 1941.
Rehearing overruled October 15, 1941.
(154 S. W., 2d Series, 625.)

*Orgain, Carroll & Bell,* and *John G. Tucker,* all of Beaumont, for plaintiffs in error.

Under the undisputed evidence the condition and structure of the platform in front of the soda fountain were open and obvious, and there was no defect and no concealed or hidden danger in connection with same, and the evidence further showed that the injured party had been in said drug store on prior occastions and had used said platform and stools upon the morning of the day upon which she received her injuries,

it was error for the court to overrule and refuse to sustain defendant's motion for an instructed verdict. Ft. Worth Ry. Co. v. Hambright, 130 S. W. (2d) 436; Crump v. Hellams, 41 S. W. (2d) 288; Stimpson v. Batex Pipe Line Co., 120 Texas 232, 36 S. W. (2d) 473.

Proof that other drug stores had different equipment was not proof of negligence. San Jacinto Bldg., Inc., v. Washington, 122 S. W. (2d) 289; Johnson v. Murray Co., 90 S. W. (2d) 920.

*C. A. Lord,* of Beaumont, and *Shivers & Keith,* of Port Arthur, for defendants in error.

In reply to the propositions set out above. J. Weingarten, Inc., v. Brockman, 134 Texas 451, 135 S. W. (2d) 698; Peveto v. Smith, 134 Texas 308, 133 S. W. (2d) 572; Ft. Worth & D. C. Ry. Co. v. Measles, 81 Texas 474, 17 S. W. 124.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was filed in the District Court of Jefferson County, Texas, by Mr. and Mrs. W. G. Shivers against Walgreen-Texas Company, a private corporation, to recover damages for personal injuries alleged to have been received by Mrs. Shivers as the result of the negligence of the Walgreen-Texas Company. Trial in the district court, with the aid of a jury, resulted in a verdict and judgment for Mr. and Mrs. Shivers in the sum of $9,365.00. This judgment was affirmed by the Court of Civil Appeals at Beaumont. 131 S. W. (2d) 650. The Walgreen-Texas Company brings error. We shall hereafter refer to Walgreen-Texas Company as Walgreen.

It appears that at the time Mrs. Shivers was injured Walgreen was conducting a retail store in the city of Beaumont, in Jefferson County, Texas. Such store was a rather large and extensive business. Many articles of merchandise were sold, and many people of all ages and sexes went there to trade. In connection with such business Walgreen maintained a soda fountain, and sold lunches and cold and hot drinks of the usual kinds. At one side of the store, and used in connection with the soda fountain, was a counter about 24 feet long. This counter extended along the side of such store. There was a platform 24 inches wide extending the whole length of the above-mentioned counter. This platform was 9-3/4 inches high,—that is, the floor of the platform was 9-3/4 inches above the floor of the store. The platform was surfaced with dark-colored square tile, between which was a band of cement

lighter than the tiles, about 1-1/2 inches in width. The general floor of the store was somewhat lighter than the floor of the platform. On the above-described platform were eleven stools, all firmly attached to the floor of the platform. These stools were spaced equidistant from each other. The tops of these stools could be turned around. The tops of these stools were about 32 inches above the floor of the platform to which they were fastened. This would make such tops about 41-3/4 inches above the general floor of the store. The tops of these stools were about 11-1/2 inches apart,—that is,'from edge to edge. At the counter above described Walgreen operated a soda fountain, and sold lunches and hot and cold drinks of various kinds. The public generally were invited to trade at such store and at such counter. In doing so they were clearly invited to use the platform and stools. Patrons desiring to trade at the above-mentioned counter would step up on the raised platform, and seat themselves on the stools fastened thereon. While so seated they would make such purchases as they desired. It is proper to assume that such purchasers were invited to, and did, eat and drink the articles purchased by them while seated on the stools. When a customer desired to leave, it was necessary for him, or her, to either step from the platform to the main floor below, or to alight directly from the stool down to the main floor of the store. It seems that Walgreen had operated the equipment above described for about eight years prior to this accident.

On November 6, 1936, Mrs. Shivers, at that time 66 years of age, who lived outside of the city of Beaumont and outside of Jefferson County, came to Beaumont with her daughter for the purpose of having an operation on the daughter's throat. The doctor who was to perform the operation officed in the building where Walgreen conducted its business. Walgreen's business was on the ground floor. The doctor's office was on one of the upper floors. On the morning Mrs. Shivers was injured she went into Walgreen's store and was served at the counter above described. We assume she was served while seated on one of the stools. In the afternoon of the same day Mrs. Shivers again went into Walgreen's store, seated herself on one of the stools above described, and was served a cup of coffee. When she attempted to leave the counter after arising from such stool she fell to the main floor, and was very severely injured. Her left leg was broken, and as a result thereof she was confined in a hospital for several months.

In regard to just how the accident occurred, Mrs. Shivers testified that she and her daughter went into this drug store that day in the forenoon; that on such occasion she sat down on one of the stools and got something to drink; that in the afternoon she again went into the store and bought a bottle of Listerine; that she then again sat down on one of the stools, and at her request was served a cup of coffee, which she drank while so seated; and that after drinking the cup of coffee she got up off the stool, and in some way she fell to the floor and was injured. At this point we deem it advisable to reproduce Mrs. Shivers' testimony in "Q. and A." form.

"Q. Do you remember how you sat down, whether you stepped up on the platform first or backed up to it and turned around, or how you did it? A. I just remember sitting down.

"Q. Well, when you went to leave there were you trying to step to the floor or were you trying ot make a step on the platform and then to the floor? A. Well, I just reached and picked up my purse and my Listerine and turned and stepped away and was tripped.

"Q. What I am getting at, is whether you were trying to make a step on the platform, or whether you were trying to make a step right to the floor? A. I don't remember anything about a platform. I just remember stepping.

"Q. You don't remember where you were trying to step? A. No, I just remember stepping and being tripped, falling.

"Q. Were you looking down at the step when you left it? A. I couldn't say.

"Q. You don't know whether you were looking down then or not? A. No, I don't know which way. I just stepped in the usual way. * * * I just felt like I was in a safe place and just stepped like any one else would."

Boiled down, we think Mrs. Shivers' testimony, when considered with attending circumstances, amounts to a statement that at the time she was injured she did not think about being upon a raised platform; that she stepped in the usual way that a person would step who was on a level floor; that the floor she intended to step to, or on, was 9-3/4 inches lower than she expected to step, and that as a result of such condition she was caused to fall and be injured. To say the least, Mrs. Shivers' testimony, taken as a whole, certainly justified the jury in drawing the conclusion just stated.

We shall not attempt a detailed statement of the pleadings of either party. It is enough to say that the pleadings of both parties were sufficient to raise the issues that were submitted to the jury, and also to raise the questions of law that we shall discuss.

In answer to special issues submitted by the trial court, the jury found:

(1) That Walgreen was negligent in maintaining in its store the raised platform of the width it was.

(2) That Walgreen was guilty of negligence in maintaining in its store the raised platform of the height it was.

(3) That Walgreen was guilty of negligence in maintaining in its store the platform in question of the width it was and the heighth it was in connection with the counter in question.

(4) That each of the above-found acts of negligence was the approximate cause of Mrs. Shivers' injuries.

(5) That Mr. and Mrs. Shivers were damaged in the sum of $9,365.00.

(6) That the accident in question was not an unavoidable accident.

(7) That Mrs. Shivers on the occastion in question here failed to observe the location and size of the platform above described, but that such failure was not negligence on her part, and was not the proximate cause of her injuries.

(8) That Mrs. Shivers did not fail to exercise ordinary care to observe the step from this platform to the floor as she left such platform.

(9) That Mr. Shivers did not fail to exercise ordinary care and assist his wife in leaving this platform.

By proper assignments Walgreen contends that this judgment against it cannot stand, for two reasons, (a) because there is no evidence contained in this record showing that it was guilty of any negligence in maintaining in its store the raised platform and equipment above described, and (b) because the evidence contained in this record shows conclusively that Mrs. Shivers' injuries were the result of her own negligence. We will dispose of these contentions in the order mentioned.

1  It is the settled law of this State, as well as the law generally, that where one person invites another person to enter or use his premises, he must use ordinary care to keep such premises in a reasonably safe condition, so that the person invited will not be injured. If an invitee is injured by reason of the negligence of the owner, while on the premises to which he has been invited, such owner is liable to such invitee in damages. Kallam v. Wheeler, 129 Texas 74, 101 S. W. (2d) 225; Carlisle v. Weingarten, 137 Texas 220, 152 S. W. (2d) 1037.

Under the above rule, we think it can be said, as a matter of law, that as regards this store, Walgreen invited the public generally to enter therein, and to use the platform, stools, and counter above described. When we say that Walgreen invited the public generally, we mean that it invited the young and the old, and the strong and the weak. In inviting all casses, it was Walgreen's duty to use ordinary care not to injure any of them. It is conclusively shown that in this instance Mrs. Shivers occupied the status of an invitee in this store and on this platform.

2  In this instance, unless the jury was justified from the evidence in convicting Walgreen of negligence, this judgment cannot stand. Stated in another way, this judgment cannot stand unless it can be said that Walgreen was negligent in maintaining this raised platform, of the width and height it was, equipped as it was, and used for the purpose it was. In our opinion, though the case is a very close one, we cannot say, as a matter of law, that no fact issue on the question of negligence is involved. This platform was very narrow, on which to seat people of all ages, and of all mental and physical conditions. It was raised a considerable height above the general floor, 9-3/4 inches. Customers who used this platform and the stools fastened thereto would usually regain the general floor by stepping down 9-3/4 inches from a space two feet wide, under very cramped surroundings. In this connection, we think the original opinion of the Court of Civil Appeals, by Judge O'Quinn, is correct in holding that the jury was not justified in believing that this platform was a thing not in general use, and not generally known to customers at lunch and cold drink counters. The testimony shows that this platform was the only one of its kind in use in Beaumont, and that very few were in use in this State. It was not a thing usually used at lunch or cold drink counters, and customers would not be

expected to be fully aware of its use or dangers in casually mounting and using the same for food or drink; at least we cannot say, as a matter of law, that the jury was not justified in so concluding. Finally, we think the jury was justified in concluding that Walgreen ought to have foreseen and anticipated this accident, in the light of attendant circumstances. Cary v. Pure Distributing Co., 133 Texas 31, 124 S. W. (2d) 847.

It seems to be contended by Walgreen that there is no evidence in this record showing, or tending to show, that this platform and its equipment was a novel or unusual fixture. We are not in accord with this contention. In this regard, we think the record justifies the following holding in Judge O'Quinn's opinion:

"The stools were not placed in the usual way upon the floor of the building, but upon a platform 9-3/4 inches high above the floor. It is insisted that they were constructed and placed in the usual way. It is common knowledge that in equipping restaurants and drug stores for service to the public, in Texas, the stools always have been and now are placed upon the *floor, not a raised platform*. A witness for appellant who was engaged in the sale of fixtures like those in question and who in fact supplied these very fixtures, testified that they were constructed in the usual way, but he evidently had in mind the 'usual way' of constructing that type of fixtures. In answer to the question 'how many of such fixtures were in use in Texas,' he answered *'probably as many as 25,'* but when asked to locate them, he could name only seven, two in Jefferson County—one in Beaumont, the one here involved, and one in Port Arthur, and four in the City of Houston, and one in El Paso, and that he did not know of any being installed in the last two years. We think it rather remarkable that a city like Houston of about 400,000 population with its many dozens of restaurants and drug stores only four could be found. Beaumont and Port Arthur with their combined population of some 130,000 and many such places of business, the two of them could boast of but two fitted out as the appellant's place. In fact the record reflects that none, other than the two mentioned, could be found in *all East Texas*. One not having ever used such arranged and constructed accommodations, it occurs to us, might very properly be expected to have more or less trouble and confusion in using them."

**3** We now come to consider whether the facts contained in this record, as a matter of law convict Mrs. Shivers of con-

tributory negligence. We do not consider it necessary to here fully define the term "negligence" or the term "contributory negligence." Both terms have reference to a failure to exercise ordinary care. 30 Tex. Jur., p. 648. The two terms differ in one very important particular. Negligence has reference to conduct which creates an undue risk of harm or injury to others. Contributory negligence has no reference to others, but refers to conduct which involves an undue risk of harm to the person who sustains it. "* * * In the one case the reasonable man, whose conduct furnishes the standard to which all normal adults must conform, is a person who pays reasonable regard to the safety of others; in the other, the reasonable man is a reasonably prudent man who as such pays reasonable regard to his own safety." Amer. Law Inst. Restatement of the Law of Torts, sec. 463, comment (b). Where it is charged that a plaintiff has been guilty of contributory negligence, the inquiry is whether or not he has acted as a reasonably prudent person would or should have acted under the same or similar circumstances. "Unless the plaintiff is a child or an insane person, the standard of conduct to which he should conform is the standard to which a reasonably prudent man would conform under like circumstances." Amer. Law Inst. Restatement of Law of Torts sec. 464. "Whether the plaintiff has paid the attention to his surroundings which as a reasonable man he is required to pay, depends upon the circumstances of the particular case. Thus, where the plaintiff sustains harm in an attempt to save a third person from harm threatened by the defendant's negligence or otherwise * * *, his preoccupation in his object may excuse his failure to discover a danger which he should have discovered under ordinary circumstances." Id., comment (c).

In the case at bar Mrs. Shivers used this platform twice on the day she was injured; once in the morning and once in the afternoon. She was injured on the second occasion in the afternoon. On each occasion she stepped upon this platform, seated herself on one of the stools attached thereto, and partook of a drink. We assume that she remained seated long enough to partake of the drink each time. We assume that she knew, in a way, each time that she occupied the platform, that she had to step up thereon from the main floor. There was nothing to prevent her from seeing the things she was using. She removed from this platform to the main floor of the store below without mishap in the morning. She may have forgotten that she was on a platform in the afternoon. At least that fact

may not have been present in her mind when she stepped down from this counter in the afternoon. She stepped as on a level. The point of landing was 9-3/4 inches below. She was thereby caused to fall. At least the jury was justified in reaching the above conclusions. Under all the circumstances recited, we are not able to say that Mrs. Shivers was guilty of contributory negligence, as a matter of law. She was a woman 66 years of age. She was evidently worried about the condition of her daughter. Her familiarity with the surroundings was confined to the two occasions above described. The jury was justified in concluding that the fact that she was on a raised platform had not been definitely impressed on her mind. The place she was using was for refreshment and relaxation. Under all such circumstances, we cannot say conclusively that Mrs. Shivers' forgetfulness constituted contributory negligence. It is true that momentary forgetfulness or inattention to a known danger may, and usually does, amount to contributory negligence. This rule, however, is not an absolute one. Forgetfulness or inattention will not always be negligence. Even though a plaintiff has forgotten, he will not be held to be guilty of contributory negligence if he has exercised that degree of care for his own safety which an ordinary prudent person would have exercised under the same or similar circumstances. "To forget is not negligence unless it amounts to a failure to exercise ordinary care for one's own safety." 45 C. J., p. 950, sec. 509.

4. In its answer Walgreen alleged that Mrs. Shivers was guilty of contributory negligence, proximately causing her injury, by backing away from this soda fountain as she attempted to leave it. There is evidence in this record showing that she backed off this platform as she was leaving the same, and that she fell while so backing. Walgreen timely requested the trial court to submit to the jury the following issues:

"From a preponderance of the evidence do you find that as Mrs. W. G. Shivers attempted to leave her seat at the soda fountain in question she backed away from same?"

"Do you find from a preponderance of the evidence that backing away from said soda fountain as she attempted to leave the same, if you have so found, was negligence?"

"Do you find from a preponderance of the evidence that such negligence, if any, in backing away from said soda fountain, if you have so found, was a proximate cause of the injuries, if any, sustained by Mrs. W. G. Shivers?"

In our opinion, the refusal of the above issues constitutes reversible error. Clearly, if such issues had been submitted, and the jury had answered: That Mrs. Shivers as she attempted to leave her seat at the said soda fountain in question backed away from the same; that in so doing she was negligent; and that such negligence was the proximate cause of her injuries; any judgment in her favor would have been defeated. This being true, it was the statutory right of Walgreen to have such issues submitted to the jury. It is the settled law that under our present special issue statutes the defendant has the same right to have his defensive issues submitted to the jury that the plaintiff has to have his offensive issues submitted. Fox v. Dallas Hotel Co., 111 Texas 461, 240 S. W. 517. We quote the following from the opinion in the case just cited:

"Each group of facts plead by defendant in error, which, standing alone, would, if proven, constitute a complete defense to plaintiff in error's suit, presented an issue. It was the statutory right of defendant in error to have the issue presented by each complete plea submitted separately to the jury, just as plaintiff in error had the right to have submitted each issue, entitling her to recover, which she plead and proved."

The three above-quoted specially requested issues were presented to the trial court in the form of three separate requested charges, numbered 36, 37, and 38, respectively. As we interpret the brief of Mr. and Mrs. Shivers, they contend that it would be an improper way to submit special issues as above requested, where such issues depend upon and are directly related to each other. In regard to this matter, it will be noted that requested issue No. 37 is dependent upon and directly related to issue No. 36. It will further be noted that issue No. 38 is dependent upon and directly related to issues Nos. 36 and 37. We do not believe that the submission of special issues, dependent upon and related to each other, in separate special charges, as here requested, is the best practice. In spite of this, we do not think such a submission would be erroneous. With the three issues before them, the jury would have readily understood their relation to each other.

It seems to be contended by counsel for Mr. and Mrs. Shivers that the above charges were incorrect because upon the weight of the evidence. As we understand this contention, it is based upon the theory that charges Nos. 37 and 38 assume as true facts which should be left to the jury. We think the

requested charges are not subject to such objection. An examination of charges Nos. 37 and 38 will disclose that the issues there requested are conditioned upon previous findings. Simply stated, No. 37 is conditioned upon the answers to No. 36, and No. 38 is conditioned upon the answers to Nos. 36 and 37.

5  In his closing argument to the jury, counsel for Mr. and Mrs. Shivers, in effect, informed the jury that the expenses of Mrs. Shivers' injuries had exhausted their little savings. Also, counsel stated to the jury: "The Walgreen Drug Company go ahead and punch a ticket and the tape runs around and the Shivers go home to Saratoga to pay their bills." Mr. and Mrs. Shivers lived at Saratoga, Texas. Counsel for Walgreen, at the time the above argument was made, timely excepted thereto, on the ground that it was "a comparison of the wealth and poverty between them—or poverty on one part and wealth on the other—and the statement is improper and prejudicial; and we especially object to the statement about the savings being gone." When the transaction above indicated occurred, the trial court ruled by making the following statement: "I don't see any prejudice in that argument. I overrule the objection." In our opinion, the above transaction presents error. This case involves no issue of exemplary damages. It follows that the business condition of Walgreen was immaterial. Also, the fact that Mr. and Mrs. Shivers may have exhausted their savings, small or large, on account of Mrs. Shivers' injuries, furnished no reason why Walgreen should pay damages. Furthermore, such fact should furnish no evidence by which the amount of damages could be arrived at. Humphreys v. Roberson, 125 Texas 558, 83 S. W. (2d) 311.

The judgment of the district court and Court of Civil Appeals are both reversed, and this cause is remanded to the district court for a new trial.

Opinion delivered July 23, 1941.

Rehearing overruled October 15, 1941.