**BLAUGRUND et al. v. PAULK.**

No. 4482.

Court of Civil Appeals of Texas. Eighth District.

Jan. 23, 1947.

Rehearing Denied Feb. 20, 1947.

Joseph G. Bennis, of El Paso, for appellants.

Jones, Hardie, Grambling & Howell, of El Paso, for appellee.

SUTTON, Justice.

This appeal is from the 65th District Court of El Paso County.

The defendants, J. B. Blaugrund and three other individuals by the same name, as partners, operate the Welch Furniture Company in the city of El Paso. The parties will be referred to as plaintiff and defendants. The plaintiff sued to recover for personal injuries alleged to have resulted from a fall on the floor of defendants' furniture store which was claimed to have been "in a highly polished, slick and unusually and excessively slippery condition," and for the cost of medical fees, supplies and services incurred as the result of such injuries. The trial on the facts was to a jury and on the verdict of the jury the court entered judgment in favor of the plaintiff for $5,325, costs, etc. From this judgment the defendants have appealed.

There are no questions presented on the pleadings and a statement of the pleadings, except as may be made incidental to some discussion, is unnecessary.

The defendants have five points of error, among which are briefly, that the court erred, first, in overruling their motion for judgment on the verdict, since the jury found: (a) plaintiff had been warned the floor upon which she fell had been recently waxed 'and was slippery; and (b) that plaintiff knew or could have known by the exercise of ordinary care the floor was in an unusually and excessively dangerous condition; and (c) that the findings of the jury establish the fact that plaintiff's knowledge of the condition of the floor was equal to that of the defendants and hence she was precluded from a recovery. The first two, findings (a) and (b), were specific findings of the jury in response to special issues.

Plaintiff's ground of negligence was that defendants had and maintained, at the time of the fall, their floor in a "highly polished, slick and unusually and excessively slippery condition." There was a favorable finding for plaintiff on that issue, but defendants say she can not recover thereon, for the reasons set out in their first points above.

The salient testimony and facts in the case, and for most part undenied or found by the jury, are: Plaintiff is a widow and has been since the death of her husband in 1929, and the mother of four children, two of whom were in school in 1943. At the time of her accident she was 49 years of age. She maintained both a ranch and town home. She was both housewife and ranch foreman and operator. She had, until September 1944, operated a 15-section "mountainous ranch" and a 7-section "flat country" ranch and at the time of the trial was still operating the latter. She supervised all the ranch operations; masonry work and construction; worked on buildings, in the branding pens, and went on the top of windmills for minor repairs and services, and rode the range regularly.

November 26, 1944, she slipped on a rug and fell on the floor at the home of a friend, but she testified she suffered no ill effects from that fall. The defendants set up in their answer that all the injuries plaintiff suffered from, if any, were caused by the fall of November 26, but the jury found in response to a special issue submitting that defense that she did not. On December 20, 1944, plaintiff went· to the defendants' store in search of some household furniture she desired to buy. She was taken by elevator to the third floor of the store by a clerk to see what they had. As she was leaving the elevator the clerk advised her the floor had been recently waxed and was slippery and cautioned her not to fall. She found pieces she wanted, but the manager's consent to split the suite had to be secured. She started to the elevator, walking ahead of the clerk. On the way he called to her that there was something she had not seen. She turned somewhat abruptly to look and began slipping; she tried to regain her balance but was unable to do so and fell to the floor. As a result of the fall she claims she suffered serious, painful and permanent injuries to her back and thigh. The medical testimony, though conflicting as to the cause, corroborates her claims as to injury. She testified since the fall in the store she has not been able to perform her usual household duties and has been wholly unable to perform her outside ranch labors. She consulted her family physician immediately following the fall in the store and received treatment from him. On January 2, 1945, she saw Dr. Sedgwick of Las Cruces, N. M., and was by him referred to Dr. Perry S. Rogers, of El Paso, an Orthopedic surgeon and specialist, who saw and examined her on January 6, 1945. Dr. Marsh of Deming had been the family physician since 1942, and prior to December 20, 1944, he said her health was excellent. He attributed her condition to the fall of December 20. It is true, as said by the defendants, Dr. Sedgwick's notes, which he relied upon, showed she complained to him of the November 26 fall, but the history she gave Dr. Rogers concerned the store fall.

On January 6, 1945, Dr. Rogers had one-quarter of an inch added to one shoe heel and the same taken off the other and ordered what is called a Taylor brace for the bene-

fit of her back. The brace was not available until January 16, 1945. The first brace was discarded in the course of some ten days or two weeks and another of similar type substituted. The brace was described by the doctor as consisting of two upright steel bands running from the pelvis to the shoulders, from the shoulders to the arm pits to hold the shoulders back and a corset front to lift the abdomen and lower part of the trunk back within the bars. The shoes she used some four months and the brace for something like eight months.

Plaintiff testified after she had fallen and was still on the floor she noticed a mark she had made while slipping; that the clerk called her attention to another long mark where some one else had slipped and said he had cautioned them before about leaving it in that condition. She said she noticed the floor had been recently waxed and was glossy like glass and excessively slippery and the clerk called her attention to the difference of the gloss where she fell and elsewhere. He denied making these statements, but he testified himself the linoleum in the aisle was quite slippery; that he had been afraid some one might slip on it and fall but hadn't mentioned it to any-one in particular nor cautioned the manager or any one in authority; that the floor was slippery enough he felt called upon to warn plaintiff before she went on it.

■■ Based on the specific findings of the jury plaintiff had been warned the floor had been recently waxed and was slippery and that she knew or could have known by the exercise of ordinary care that it was in an unusually and excessively slippery and dangerous condition and the propositions asserted in the following authorities that a proprietor is liable only to an invitee for injuries sustained as a result of hidden defects and conditions known to him and unknown to the invitee, and that he is not liable for injuries caused by conditions of which the invitee has knowledge equal to that of a proprietor, and therefore an equal appreciation of the danger, 45 C.J., p. 837, Sec. 244, quoted in Marshall v. San Jacinto Building, Tex.Civ.App., 67 S.W.2d 372, error refused; Hausman Packing Co. v. Badwey, Tex.Civ.App., 147 S.W.2d 856, error refused; Stamford Oil Mill Co. v. Barnes, 103 Tex. 409, 128 S.W. 375, 31 L.R.A.,N.S., 1218, Ann.Cas.1913A, 111; Beeville Cotton Oil Co. v. Sells, Tex.Civ. App., 84 S.W.2d 575; Fort Worth & D. C. Ry. Co. v. Hambright, Tex.Civ.App., 130 S.W.2d 436, error dismissed, it has been concluded the case must be reversed, because of the conflict between those findings and the one on the issue of negligence.

In our opinion there is a conflict between the finding that the defendants were guilty of negligence and findings (a) and (b) heretofore quoted herein in substance that plaintiff was warned of the condition of the floor and that she knew or could have known by the exercise of ordinary care the floor was in an unusually and excessively dangerous condition.

The relevant inquiry here, that is, the issue arising under the pleading and evidence, was did the defendants breach their duty to exercise ordinary care for the safety of the plaintiff? Unquestionably one part of the verdict establishes that they did breach this duty, but it is thought that findings (a) and (b) establish that they did not breach the duty to exercise ordinary care for the safety of the plaintiff. If this be true the findings are in conflict. Such findings are mutually destructive. In such a case the verdict will not support a judgment in favor of either party. Pearson v. Doherty, 143 Tex. 64, 183 S.W.2d 453(T).

The point urged by appellants is that judgment should have been in their favor on the verdict. Our view is that the point includes the contention that the judgment should not have been against them. We are inclined to the belief that the points urged are sufficient to warrant the disposition of the case on the theory that the verdict being in conflict on vital matters, is insufficient to support a judgment for either party.

■ It is fundamental that the judgment of the Court in a jury trial should follow the verdict. There being no verdict on account of a conflict on vital issues, no judgment should be rendered.

The writer has been slow in reaching the conclusion, more readily reached by the majority, and agreeing to the disposition to be made for the reasons briefly as follows: A storekeeper's place, where the whole pub-

lic regardless of age and physical condition are invited and go, differs from mills, plants and many other establishments which from the very nature of things must be operated with more or less attendant dangers. Nor is a waxed floor similar to a banana peel on a portion of it, or some other defect which extends to less than the whole and may be easily avoided. It is neither custom, nor is it practicable and possible for storekeepers to operate their business with slippery floors, nor to warn all who come of the condition, hence the duty imposed upon them to keep their floors in a reasonably safe condition to avoid injury to those invited to do business with them. Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S. W.2d 625(T) at pages 628, 629, pars. 1-2; Russell v. Liggett Drug Co., Tex.Civ.App., 153 S.W.2d 231, at page 233, pars. 1, 2.

In the Walgreen case, supra, the condition there was certainly obvious and plainly visible to any who used it and the knowledge of the customers must have been equal to that of the proprietor. It was assumed the plaintiff in that case did know the conditions, 137 Tex. 493, 154 S.W.2d at page 630, pars. 9, 10.

The jury in the instant case found the plaintiff used ordinary care for her own safety on the occasion in question. This writer construes the Walgreen case, supra, and the case of McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442, at page 447, pars. 4-7, to hold that it is not sufficient that plaintiff have knowledge of a dangerous condition, but having such knowledge, would one of ordinary care subject himself to such danger, and that a question of fact is presented unless it can be said as a matter of law one of ordinary prudence would not have incurred the risk. The substance of the invitation held out to plaintiff was, the floor had been recently waxed and was slippery and dangerous but she might safely go upon it if she were careful. Of course, a slippery and dangerous floor, as testified to by the salesman, is not reasonably safe for the use of customers.

In accordance with the conclusion reached and the authorities first cited it is ordered that the judgment of the trial court be reversed and remanded.